ISHEE, J.,
for the Court:
¶ 1. In this appeal, we are asked to decide if a landowner who lost his land at a tax sale was given adequate notice of a suit to quiet title in the purchaser before a default judgment was entered against him and whether he was protected by the bankruptcy laws. The chancellor found that a diligent search and inquiry had been conducted for the landowner before service by publication was made and that the bankruptcy laws were inapplicable. The landowner appeals pro se, raising the following issues: whether he received proper notice of the default judgment and whether he was under the protection of the bankruptcy court at the time of the tax sale and its redemption period. On appeal, the landowner also raises several other issues, but he failed to raise them at the trial level. Thus, we will only consider those issues the landowner raised at trial. Finding no error, we affirm the chancery court’s judgment.
FACTS AND PROCEDURAL HISTORY
¶ 2. James M. Johnson at one time owned five lots in the Forrest Park Subdivision (the property) in Biloxi, Mississippi. However, he failed to pay his 2005 city, county, and school taxes in the amount of $719.44.[1] The Harrison County Tax Col *606 lector held an auction on August 28, 2006. Ruby and E.H. Anderson were the highest bidders, paying $719.44 for the property and chancery fees of $80.50. The two-year redemption period expired on August 28, 2008, without Johnson coming forward to redeem the property. The property was conveyed to the Andersons via a tax deed on October 8, 2008, by the Chancery Clerk of Harrison County. The tax deed was recorded in the office of the Chancery Clerk of Harrison County on October 21, 2008.
¶ 3. The documents placed in the record by Johnson show that he filed for Chapter 13 bankruptcy protection first on April 28, 2008, and the case was dismissed on September 25, 2009. He said that he filed another Chapter 13 bankruptcy. During the hearing, one of the attorneys for the Andersons said that the second Chapter 13 bankruptcy action had been dismissed.
¶ 4. The Andersons found a buyer for the property, Thomas Kohler. On August 26, 2009, they filed a complaint to confirm and quiet title.[2] The complaint referenced two exhibits that were not included and served with the complaint. The Andersons only realized the error in October 2009 when one of the defendants pointed out in its answer that there were no exhibits attached. On October 28, 2009, the Andersons supplemented the complaint with two exhibits: “A,” which was the Conveyance of Land Sold for Taxes, and “B,” which was the Conveyed Property History from the tax collector’s office. The exhibits were sent to a deputy chan-eery clerk with a letter requesting that they be added to the filed copy of the complaint. However, there is no evidence that either document was served on the defendants.
¶ 5. It is obvious from the record that Johnson did not receive a copy of documents “A” and “B,” as his statements in the record show his confusion about them. The complaint to confirm and quite title named Johnson as one of the defendants because he was the record title holder at the time of the tax sale. The Andersons’ attorney attempted to serve personal process on Johnson twice, as is shown by a note on the docket on September 3, 2009, where a deputy clerk recorded the following: “RETURNED TO ATTORNEY FOR PUB.” The attorney for the Andersons said that personal process on Johnson was attempted twice at 954 1/2 Howard Avenue in Biloxi, a location where Johnson was doing business as Johnson Property Investment, LLC, a property rental business. The Andersons put into evidence various documents from Johnson’s bankruptcy filings showing that he listed his address as 954 1/2 Howard Avenue.
¶ 6. The Andersons next issued summons by publication in the local newspaper, The Biloxi Sunr-Herald, running the summons on October 9, October 16, and October 23, 2009. Proof of publication was filed with the chancery court on November 2, 2009. On January 4, 2010, the Andersons filed an application to the clerk for an entry of default and supporting *607 affidavit stating that Johnson had failed to plead or otherwise defend the suit to confirm and quiet title. On the same day, the clerk executed and filed the entry of default against Johnson. The following day, without a hearing, the chancellor entered a final judgment of default against Johnson and confirmed title in the Andersons. After obtaining the judgment in their favor, the Andersons sold the property via warranty deed to Kohler on January 22, 2010.
¶ 7. On February 1, 2010, Johnson timely filed a pro se motion to set aside the default judgment claiming that he failed to receive proper notice of the suit to quiet title and also claiming that the judgment should be set aside because the property at issue was under the jurisdiction of the bankruptcy court.
¶ 8. A hearing was set for Johnson’s motion. Prior to the hearing, the Andersons and Kohler[3] sought and received a preliminary injunction against Johnson after he had tried to put a trailer on the property. The injunction provided that the property was to be maintained in “status quo” until the chancery court’s ruling.
¶ 9. Johnson represented himself at the hearing on the motion to set aside default judgment. He had two arguments. The first was that the Andersons had failed to exercise due diligence to find him before they took the default judgment. His main point was that he had a postal forwarding address from 954 1/2 Howard Avenue to 230C Baker Street in Biloxi, but there was no attempt to serve him by mail. Johnson put into the record a copy of a letter sent to him by the Andersons’ law firm at the 954 1/2 address which was forwarded by the United States Postal Service to the forwarding address of 230C Baker Street. He argued that if the service had been by mail he would have received it at the 230C Baker Street address because his mail from his former business was forwarded to that address. Johnson was asked by the Andersons’ attorney if there was any power or water turned on at the 230C Baker Street address, and he said that there was not. Johnson said that he used the 230C Baker Street address for receiving his mail, but he actually resided at 222C Baker Street. Also, Johnson placed into the record a copy of a summons showing personal service on him of the order granting a temporary restraining order. The Andersons’ attorney responded that when Johnson filed his motion to set aside default judgment, he supplied the Andersons with the 230C Baker Street address and from that he was personally served.
¶ 10. Johnson’s other argument was that he was under the protection of the bankruptcy court at the time of the suit to quiet and confirm title was taken against him. He produced various copies of bankruptcy documents, which we shall discuss further during our analysis. The chancellor denied Johnson’s motion to set aside the default judgment. As to the issue of diligent search and inquiry, the chancellor noted that Johnson had had multiple addresses over the last few years. She found that the Andersons attempted to serve Johnson at the 954 1/2 Howard Avenue address, which was the address listed for Johnson on the tax assessor’s rolls as well as on Johnson’s bankruptcy filings. The chancellor also noted that counsel for the Andersons stated by sworn affidavit that he had not been able to ascertain Johnson’s post office box or street address after diligent search and inquiry at the time the process was issued. The chancellor concluded that the Andersons had attempted to locate Johnson using his last known address of record and further that *608 the bankruptcy documents had been searched to obtain his address. Based upon this evidence, she found that Andersons had made a diligent search and inquiry as to Johnson’s whereabouts and that the summons by publication was proper.
¶ 11. The dates of filing and of discharge and closing of Johnson’s two chapter 13 bankruptcy filings were never conclusively proven by the record before this Court. From Johnson’s pro se brief and rebuttal brief, it is hard to understand what Johnson’s argument is on the bankruptcy issue. However, at trial, he appeared to argue that he was in bankruptcy when the property was ultimately-sold for taxes. Johnson agreed that he was not in bankruptcy when the tax sale occurred in August 28, 2006. However, he asserted that he filed for bankruptcy on August 19, 2008, at a time when his two-year right of redemption had not expired. The chancellor, citing bankruptcy law which we will discuss in our analysis, held that the equitable right of redemption becomes a part of the bankruptcy estate and that the real property involved in the sale itself is not an asset. When Johnson filed for bankruptcy, the trustee had only nine days to redeem the property plus thirty additional days given by bankruptcy law in Johnson’s situation. The trustee on behalf of Johnson did not redeem the property, and on October 8, 2008, a tax deed was issued to the Andersons. Johnson further argued that the automatic stay, which was enacted upon filing for bankruptcy, should have prevented the default judgment. However, the chancellor held the automatic stay was not applicable to Johnson’s second bankruptcy filing because the bankruptcy rules only allow a thirty-day automatic stay when a bankruptcy petition is filed within one year after the dismissal of a previous filing. The record shows that Johnson filed his second bankruptcy petition almost immediately after the dismissal of his first bankruptcy action. Thus, the chancellor denied Johnson’s motion to set aside.
ANALYSIS
¶ 12. “This Court will not disturb the findings of a chancellor unless the chancellor was manifestly wrong, clearly erroneous[,] or an erroneous legal standard was applied.” Rush v. Wallace Rentals, LLC, 837 So.2d 191, 194 (¶ 11) (Miss.2003) (citing Bell v. Parker, 563 So.2d 594, 596-97 (Miss.1990)). However, we employ a de novo standard of review for questions of law “and will only reverse for an erroneous interpretation or application of the law.” Morgan v. West, 812 So.2d 987, 990 (IT 8) (Miss.2002).
I. Whether Johnson was Properly Served
¶ 13. Johnson challenges the service of process on him in the suit to quiet title which resulted in a default judgment for the Andersons to award them the property. Johnson claims the Andersons failed to make a diligent inquiry to find him before resorting to summons by publication.
¶ 14. Rule 4 of the Mississippi Rules of Civil Procedure governs how a party is to be served. “The principal purpose of process is to give to the party to whom it is addressed notice of the proceeding to be defended.” Mid-South Pipeline Contractors, Inc. v. Citizens Nat’l Bank of Meridian, 239 Miss. 621, 627, 124 So.2d 697, 700 (1960).
¶ 15. The Andersons twice attempted personal service upon Johnson pursuant to Rule 4(c)(1) by using a process server. The address on the summons was 954 1/2 Howard Avenue in Biloxi. This was the address that was listed on the Harrison *609 County tax rolls as Johnson’s last known address. The Andersons presented the chancellor with copies of Johnson’s own bankruptcy filings from 2008, which listed 954 1/2 Howard Avenue as his address. After two attempts, the process server returned the summons acknowledging that Johnson could not be found in Harrison County. The chancellor also recognized that the attorney for the Andersons stated by sworn affidavit that he had not been able to ascertain, after diligent search and inquiry, the post office box or street address for Johnson. Johnson’s main argument was that he had a postal forwarding address from 954 1/2 Howard Avenue to 230C Baker Street in Biloxi, but there was no attempt to serve him by mail. Johnson put into the record a copy of a letter sent to him by the Andersons’ law firm at the 954 1/2 address which was forwarded by the United States Postal Service to the forwarding address of 230C Baker Street. He argued that if the service had been by mail he would have received it at the 230C Baker Street address because his mail from his former business was forwarded to that address.
¶ 16. In Page v. Crawford, 883 So.2d 609, 611-12 (¶ 11) (Miss.Ct.App.2004), overruled in part on other grounds by East Mississippi State Hospital v. Adams, 947 So.2d 887, 891 (¶ 10) (Miss.2007), we held that there was “no bright line rule as to how many efforts must be made by a plaintiff to locate a named defendant to satisfy the requirement of diligent inquiry.” Instead, we said that determining diligent inquiry involves balancing the quality of the inquiries for the summoned party with their quantity. Id. “Standing on a street corner and asking passersby if they know the defendant’s location would clearly not constitute diligence, no matter how many persons were asked in that manner. Beyond that, it becomes a matter of balancing quantity, quality[,] and the interests of the parties.” Id. at 612. The Andersons’ attorney’s affidavit is not a part of the record as it was not designated by Johnson to be included. However, the chancellor, in her ruling, states that the attorney said in the sworn affidavit that he had been unable to ascertain Johnson’s post office or street address after diligent search and inquiry. The chancery court found that Johnson had multiple addresses over the last few years. She ruled that the Andersons had attempted to locate Johnson by a diligent search and inquiry before resorting to summons by publication; thus, she found summons by publication was proper. We agree that the Andersons’ attempts to locate Johnson were proper, with two personal service summons returned unfound at an address, which Anderson himself used on various documents including his own bankruptcy filings. Therefore, we find this issue is without merit.
II. Whether the Chancellor Erred in Her Application of Federal Bankruptcy Law
1117. In this issue, Johnson claims that he was under the jurisdiction of the bankruptcy court at the time the suit to confirm and quiet title was filed; thus, any action in the chancery proceeding was stayed by the automatic stay under bankruptcy law.
¶ 18. There is no doubt Johnson was not in bankruptcy when the tax sale was held on August 28, 2006. However, he said that he had filed for Chapter 13 bankruptcy on August 19, 2008. The chancellor and the attorney for the Andersons must have accepted this date for filing as the Andersons’ argument and the chancellor’s decision to use the date in their analysis. Under Mississippi Code Annotated section 27-45-3 (Rev.2010), the owner of land sold for taxes may redeem the land if he comes *610 forward to do so within two years after the date of sale. Accordingly, Johnson would have had the nine days between August 19, 2008, when he filed for bankruptcy, and August 28, 2008, when the two-year redemption period expired, in which to redeem his property. He admitted that he did not redeem his property during this time. However, he claims that the stay of the bankruptcy court tolled the running of the redemption period.
¶ 19. First, under bankruptcy law, the right to redeem property from a tax sale is an asset that becomes the property of the estate. The real property involved in the sale is not itself an asset. In re Isom, 342 B.R. 743, 744 (Bankr.N.D.Miss.2006). Under 11 U.S.C. § 108(b), if the period of redemption has not expired when the bankruptcy petition is filed, then a period of sixty days is given to the debtor or his representative to redeem. Id. at 745. The law makes no mention of tolling the running of the redemption period other than for the sixty days. The Isom court said that once a foreclosure sale has been conducted and the debtor thereafter files bankruptcy, the automatic stay does not toll the running of the state law foreclosure period. Id. at 746. One of the cases Isom cites for this proposition is In re Canney, 284 F.3d 362, 372 (2nd Cir.2002). In Canney, the federal court held that section 108(b), not section 362(a) (which sets out the automatic stay), governs the tolling of a period of equitable redemption. Id. The court said that “the automatic stay prevents only certain affirmative acts taken by a creditor, and the running of time is not one of those acts.” Id. The court noted that although section 362 would give the debtor greater protection, “where one section of the Bankruptcy Code explicitly governs an issue, another section should not be interpreted to cause an irreconcilable conflict”; thus, section 108 controls the period of time a trustee has to redeem the debtor’s property. Id.
¶ 20. The chancellor found that neither Johnson nor his bankruptcy trustee had taken any action to redeem the property and that the time period for doing so had long since passed. Further, the chancellor found the automatic stay did not apply. She based this finding on 11 U.S.C. § 362(c)(3) which states that a bankruptcy petition filed within one year after the dismissal of a previous bankruptcy case, which Johnson did, only carries a thirty-day automatic stay. She found that the thirty-day period had long expired without Johnson taking any action. Under either of these applications of bankruptcy law, Johnson is precluded from setting aside the default judgment. This issue lacks merit.
¶ 21. THE JUDGMENT OF THE CHANCERY COURT OF HARRISON COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., MYERS, BARNES, ROBERTS, MAXWELL AND RUSSELL, JJ., CONCUR. CARLTON, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.

. The Conveyed Property History of the Harrison County Tax Collector shows that notice of the sale was sent to Johnson three times-twice to 369 East Dr., Biloxi, Mississippi, and *606 once to 954 1/2 Howard Avenue, Biloxi, Mississippi.

. Originally, there were other defendants, each of whom answered that he had no interest in the property. For a month between September 29, 2009, to October 26, 2009, the chancery action was removed to the United States District Court for the Southern District of Mississippi by the United States Small Business Administration (SBA) which had a mortgage lien on the property. The SBA determined that because it was in a third lien position and the post-Hurricane Katrina value of the property was minimal, that it was not economically feasible to pursue an interest in the property, and it had the district court remand the action to the chancery court.

. Kohler, as record title holder of the property, was allowed to intervene in the action.